Submissions against Hotel Incorporated, and I'll ask Mr. McCarthy. May it please the Court? There are two points I'd like to try to make this morning. The first thing is that the invention of the 796 patent is a universal tool, and the inventors here, they recognized the need for a universal tool, and they defined the problem by doing that. And that was part of the invention, was that they figured out the need that didn't exist before that. The prior art, however, was describing universal sensors and not universal tools to activate the sensors. So the McClellan reference, for example, which clearly described a continuous wave method of activation, there's no recognition anywhere in McClellan of a need for a tool to activate different kinds of sensors or different methods of activation. McClellan's theory, if you follow probably his business plan, was that everyone has the same kind of sensors, and then they use his tool to activate them. And the same thing with Kranz, which clearly used a modulated wave method of activation. Kranz did not recognize any need for a universal tool either. In fact, Kranz specifically suggested that all vehicles in a fleet use the same type of sensor. And that brings us to Dixit, which of course was a big item of contention between the parties. Dixit did not describe a universal tool. He does use the term universal tool, but he doesn't describe the universal tool. Dixit required universal sensors. Now, I understand that a patent is enabling for, or is presumed to be enabling, and Dixit certainly is enabling for what he described, which was a method of programming bits into sensors. But where the board relied on Dixit to show that it's a generic tool, it's only a generic tool if everyone uses Dixit sensors, and that is not really a generic tool. Dixit sensors would have to have a writable memory, they'd have to have a controller so that they could write to that memory. I guess the understanding from Dixit was just the quoted sentences that showed that from there was an appreciation in the art for coming up with a universal tool that could work in a lot of different contexts, which to me sounds a lot like when I'm at home and I have a remote control for the TV, and I have a remote control for the DVD, and I have a remote control for the Xbox, and I think, gosh, it would be pretty nice to have just one remote control that could talk to all these different devices. And that's kind of what your invention is, right? That's correct. The ability to talk to different, you know... That's an absolutely fair analogy. ...tire pushing monitoring systems. Absolutely. But what Dixit recognized was if your DVD and your VCR and your TV all use the same kind of sensor, then you only need one tool. But that's not the way that the tire sensor business works, because it's just like your different method than the TV or the VCR or your Xbox or whatever kind of devices you have. So by analogy, the 796 patent is you have one tool, and it will use one method for your television, and it will use a different method to control your DVD player and a different method to control your VCR. Dixit would only have one tool if all of those used the same method of control or method of activation. And that's why Dixit... I agree. He uses the term universal tool, but he's not describing a universal tool. He's describing a tool with a universal sensor, because that's all he described was one way of writing bits to a sensor, to a RTMS sensor. So that is not a universal tool. That's a universal sensor. The device that... Excuse me. The reference that did recognize being somewhat of a universal tool was Howell, which would use different methods of activation. But Howell was not for RTMS systems and didn't teach anything about activation of sensors on tires. So the combination does not teach the claims which were for this universal tool of at least two methods of activation. Now, I was criticized for arguing the references individually, and I've done that this morning. I recognize. But it's because when you have a series of references or a number of references that are relied upon to create a combination that supposedly makes the claims obvious, if one of those does not do what it's relied upon for, then the combination fails. So if you have a three-legged stool and you knock out one leg, your stool's not going to stand up anymore. And so the Dixit case in particular... Excuse me. The Dixit reference is not a universal tool. Despite using that term, it does not describe a universal tool. And so the combination that was relied upon by the board does not teach the claims or suggest the claims. Can we talk about Howell? Howell seems to be the bridge or, you know, if Dixit doesn't provide the bridge, then at least Howell appears to provide the bridge, at least under a substantial evidence standard or an appreciation that when there's a lot of different communication systems with different end products, then Howell tells us, well, let's create a universal tool, a handheld unit that is able to remotely talk with each of those end products, you know, in accordance with the particular system that each product contains. And so, therefore, that known insight for remotely communicating between a whole host of different devices was applied or would be obvious to apply to this other situation, which is what you have claimed here with talking to different tire pressure monitoring systems. It's obvious to apply that if there's some reason to do that, such as market pressure, which was recognized in the KSR case, which was not present in this case. Looking back now, almost every car now has these kind of pressure systems. At the time of the invention, though, they weren't required by law. They're required now.  So, yes, I agree under the substantial evidence standard that Howell does show a universal tool for RFID chips or RFID tags, but not for tire pressure monitoring systems. And so it's our contention that by using the roadmap of the 796 patent, you can look back and say, well, yeah, that was obvious to combine all these prior art references, but that's only if you know today what we know now. And at the time of the invention, that was not at all obvious. And, therefore, I ask you to find that these claims are not obvious over the combination cited by the board. The second thing I wanted to discuss was the McClellan case in a little bit more detail, because McClellan is relied upon both for anticipation and for obviousness. And McClellan only described a tool with one means for activation. And he did say, well, other frequencies or ranges of frequencies may be used. But it's significant that he didn't say additional frequencies may be used. He said other ranges. He said different frequencies and maybe substituted. And substituted to me means that you use it in place. But something else. So McClellan doesn't suggest using one range, one frequency, and then use another frequency. He says he only describes one frequency. And you can't use his disclosure or his description of his tool as a roadmap to find a device that activates at two different frequencies. Now, he does say ranges of frequencies, which my expert says is a vague term. And it is, because we don't know what it means. Because is a range just the Gaussian curve around 125 megahertz? Or is it everything from 125 up to something else? In any event, it's still a different range of frequencies. And it doesn't lead anyone to think, well, hey, I could use this tool to activate at two different frequencies. He only describes one frequency. And, therefore, he doesn't anticipate and he doesn't render obvious either. Because the board noted that a person of skill in the art understanding the problems presented by incompatible sensors. But there was not a recognition of a problem of incompatible sensors for RTMS systems. Until the inventors of the 796 patent recognized the problem. They recognized it. Nobody else did. And, therefore, the claims are not anticipated and they're not obvious over the art, as I've discussed. Thank you. Thank you. Mr. McCarthy? Ms. Lynch? May it please the Court? Go ahead. Tools that can activate tire sensors were known in the art. And Bosch has claimed a tool that can simply use tire sensors using two or more of these known methods. Bosch argues that his claimed tool isn't obvious because there wasn't any design need or market pressure. But the prior art discloses both the design need and market pressure. Prior art Howell talks about the incompatibility between what was currently on the market and says that that's hindering the widespread adoption of the technology. But doesn't that support their position? The need was long recognized and unsatisfied. They don't make a long- The long-felt need is a significant factor, is it not? It can be a significant factor. Bosch doesn't argue that there was a long-felt need in this case. They don't make any of that showing whatsoever. So the prior art basically- They don't have to. The prior art says so. So this is a long-felt need for some kind of universal device. The prior art didn't say there was a long-felt need. They just said at that- You've cited that prior art as a basis for obviousness. Correct. And so the prior art Howell says at that time there was an incompatibility between the current things on the market. That's all it says. It didn't say that there was a long-felt need. It didn't say that people had tried and failed to fix this. Nothing. It just said that things were incompatible, and that was known in the art. And so the board correctly found that based on this known incompatibility, a person of ordinary skill in the art would have been motivated to make a tool that used more than one method in order to decrease the number of tools that they had to use. As to McClelland- Is there any suggestion that combining these various tools was technologically difficult or complex? No. Bosh made no such arguments that that would be beyond the skill of a person of ordinary skill in the art. And then McClelland, it does suggest more than one frequency when it says ranges of frequency, and the board explains that at page 835 of its decision. If the court has no further questions, I will yield my time. Okay, thank you. Mr. McCarthy, your last word. I don't really have anything to add other than what I've already said. Okay, thank you. Thank you both. The case is taken into submission.